UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY FRIES, Individually and On Behalf of All Others Similarly Situated, | ) Case No. ) |
| | ) |
| Plaintiff, | ) COMPLAINT FOR VIOLATION OF ) THE FEDERAL SECURITIES LAWS |
| | ) |
| v. | ) DEMAND FOR JURY TRIAL |
| | ) |
| NORTHERN OIL AND GAS, INC., MICHAEL L. REGER, and THOMAS W. STOELK, | ) ) ) |
| | ) |
| Defendants. | ) ) |
| | ) |

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey Fries ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Northern Oil and Gas, Inc. ("Northern Oil" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Northern Oil securities between March 1, 2013 and August 15, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Northern Oil is an independent energy company engaged in the acquisition, exploration, development, and production of oil and natural gas properties in the United States. The Company primarily holds interests in the Bakken and Three Forks formations in the Williston Basin of North Dakota and Montana.

3.      Northern Oil is headquartered in Wayzata, Minnesota.  The Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "NOG."

4.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Northern Oil's compliance policies with respect to SEC regulations and the Company's Code of Business Conduct and Ethics were inadequate to detect and/or prevent misconduct by the Company's officers; (ii) consequently, the Company's Chief Executive Officer ("CEO"), Defendant Michael Reger ("Reger"), was able to engage in illegal stock manipulation during his tenure at Northern Oil; (iii) Reger was consequently unfit to serve as Northern Oil's CEO; and (iv) as a result of the foregoing, Northern Oil's public statements were materially false and misleading at all relevant times.

5.    On August 16, 2016, Northern Oil fired Reger as CEO after Reger told the Company that he had received a Wells Notice[1] from the SEC and faced federal sanctions in connection with the SEC's investigation of 2012 trading patterns in the securities of Dakota Plains Holdings, Inc. ("Dakota Plains"), a company in which Reger initially invested in 2008.  Northern Oil stated that Reger had been removed from the Company's board, effective immediately, and that the Company does not believe that Reger will be entitled to any severance payment.

6.    On this news, Northern Oil stock fell $0.25, or 6.28%, to close at $3.73 on August 16, 2016.

7.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.    Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company's shares trade on the NYSE, located in this District.

11.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

---

[1] A Wells notice is a letter from the SEC advising a person or a firm that the SEC intends to bring an enforcement action against them.

3

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Northern Oil securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Northern Oil is incorporated in Minnesota, and the Company's principal executive offices are located at 315 Manitoba Avenue, Suite 200, Wayzata, Minnesota 55391.

14.     Defendant Michael L. Reger served as the Company's Chief Executive Officer ("CEO") from 2007 until his termination on August 16, 2015.

15.     Defendant Thomas W. Stoelk ("Stoelk") has served at all relevant times as the Company's Chief Financial Officer and as the Company's interim CEO since Defendant Reger's termination.

16.     The defendants described in ¶¶ 14-15 are sometimes hereinafter referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

17.     Northern Oil is an independent energy company engaged in the acquisition, exploration, development, and production of oil and natural gas properties in the United States. The Company primarily holds interests in the Bakken and Three Forks formations in the Williston Basin of North Dakota and Montana.

18.     Defendant Reger co-founded Northern Oil in 2006 at the age of 30 and has played an outsized role in the Company's business at all relevant times.  In a 2008 profile in the online

4

edition of Minnesota's *Star Tribune* newspaper, Reger stated that his "family history in oil and gas dates to the 1930s" and that he has "been involved in the acquisition of land, oil and gas leases my entire professional life. . . I am the fourth generation in my family to be in the oil and gas business." In 2012 and 2013, *Forbes* named Reger one of "America's Most Powerful CEOs 40 and Under." As described *infra* at ¶¶ 23 and 24, Northern Oil has highlighted the significance of Reger's leadership to the Company's success and prospects.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on March 1, 2013, when Northern Oil filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2012 (the "2012 10-K"). For the quarter, Northern Oil reported net income of $19.55 million, or $0.31 per diluted share, on revenue of $84.73 million, compared to a net loss of $1.38 million, or $0.02 per diluted share, on revenue of $50.59 million for the same period in the prior year. For 2012, Northern Oil reported net income of $72.29 million, or $1.15 per diluted share, on revenue of $296.43 million, compared to net income of $40.61 million, or $0.65 per diluted share, on revenue of $146.32 million for 2011.

20.     In the 2012 10-K, Northern Oil stated, in part:

**Directors, Executive Officers, and Corporate Governance**

. . .

We have adopted a Code of Business Conduct and Ethics that applies to our chief executive officer, chief financial officer and persons performing similar functions. A copy is available on our website at www.northernoil.com. We intend to post on our website any amendments to, or waivers from, our Code of Business Conduct and Ethics pursuant to the rules of the SEC and NYSE MKT.

21.     At all relevant times, the Company's Code of Business Conduct and Ethics, effective as of November 30, 2007 and incorporated by reference in the Company's 2012 10-K, has stated, in part:

> **Business Ethics**
> It is the policy of the Company that all employees and directors comply strictly with all laws governing its operations and to conduct its affairs in keeping with the highest moral, legal and ethical standards. ***In particular, senior executives hold an important and elevated role in maintaining a commitment to (i) honest and ethical conduct***; (ii) full, fair, accurate, timely and understandable disclosure in the Company's public communications, and (iii) compliance with applicable government rules and regulations.
>
> . . .
>
> **Illegal or Unethical Behavior**
> The Company proactively promotes ethical behavior.  Employees should report violations of applicable laws, rules and regulations, this Code or any other code, policy or procedure of the Company to appropriate personnel.  Officers of the Company should report any such violation directly to the chief executive officer and/or the chief financial officer.  Employees and directors are expected to cooperate in internal investigations of misconduct.

(Emphasis added.)

22.     The 2012 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2012 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On October 2, 2013, Reger presented on behalf of Northern Oil at the Independent Petroleum Association of America's Oil and Gas Investment Symposium in San Francisco, California.  During his presentation, Reger emphasized his own importance to the Company:

> ***I'm a fourth generation land man in the Williston Basin which is one of the advantages we had back in 2006 when we started leasing***. We really knew what was happening on the ground in Mountrail County when EOG hit that first well in Mountrail County in May of 2006. So we have brokers on the ground basically within days of that discovery.

6

> So we are pure-play Williston Basin operator or non-operator and participant, and we will continue to be a non-operator in the Williston Basin. We are going to continue to exploit our competitive advantage in Basin.

(Emphasis added.)

24.   On December 12, 2013, Northern Oil's Executive Vice President, Corporate Development and Strategy, Brandon Elliott ("Elliott") presented at Capital One Securities 8th Annual Energy Conference.   During his presentation, Elliott highlighted Defendant Reger's leadership as a key component of Northern Oil's success and business prospects:

> We currently have a strong reserve base. Pretty good equity value and enterprise value as you can see, indicated here at the bottom. Couple of things we think you should care about when you are looking at Northern. It is a very strong, defensible, non-op position in one of the leading oil plays in the U.S. ***We are obviously laser focused on transactions in the [Williston] basin. It's a basin where we have been since we started and have had with our co-founder, Mike Reger, a four generation advantage on the ground in this basin.*** So we clearly know where land deals are being done and where they are likely to be done in the future.
>
> ***We have built on that early mover advantage into this current position.***

(Emphases added.)

25.   On March 3, 2014, Northern Oil filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2013 10-K").   For the quarter, Northern Oil reported net income of $17.40 million, or $0.28 per diluted share, on revenue of $95.94 million, compared to net income of $19.55 million, or $0.31 per diluted share, on revenue of $84.73 million for the same period in the prior year.   For 2013, Northern Oil reported net income of $53.07 million, or $0.85 per diluted share, on revenue of $357.03 million, compared to net income of $72.29 million, or $1.15 per diluted share, on revenue of $296.43 million for 2012.

26.   In the 2013 10-K, the Company stated, in part:

***Directors, Executive Officers and Corporate Governance***

. . .

7

We have adopted a Code of Business Conduct and Ethics that applies to our chief executive officer, chief financial officer and persons performing similar functions. A copy is available on our website at www.northernoil.com.  We intend to post on our website any amendments to, or waivers from, our Code of Business Conduct and Ethics pursuant to the rules of the SEC and NYSE MKT.

27.     As described *supra* at ¶ 21, at all relevant times the Company's Code of Business Conduct and Ethics, incorporated by reference in the Company's 2013 10-K, described the Company's purported commitment to the promotion of ethical conduct by its officers, and highlighted "the important and elevated role" of its senior executives in "maintaining [that] commitment."

28.     The 2013 10-K contained signed certifications pursuant to  SOX by the Individual Defendants, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On February 27, 2015, Northern Oil filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K").  For the quarter, Northern Oil reported net income of $103.58 million, or $1.71 per diluted share, on revenue of $111.68 million, compared to net income of $17.40 million, or $0.28 per diluted share, on revenue of $95.94 million for the same period in the prior year.  For 2014, Northern Oil reported net income of $163.75 million, or $2.69 per diluted share, on revenue of $423.75 million, compared to net income of $53.07 million, or $0.85 per diluted share, on revenue of $357.03 million for 2013.

30.     In the 2014 10-K, Northern Oil stated, in part:

***Directors, Executive Officers, and Corporate Governance***

. . .

We have adopted a Code of Business Conduct and Ethics that applies to our chief executive officer, chief financial officer and persons performing similar functions.

A copy is available on our website at www.northernoil.com.  We intend to post on our website any amendments to, or waivers from, our Code of Business Conduct and Ethics pursuant to the rules of the SEC and NYSE MKT.

31.     As described *supra* at ¶ 21, at all relevant times the Company's Code of Business Conduct and Ethics, incorporated by reference in the Company's 2014 10-K, described the Company's purported commitment to the promotion of ethical conduct by its officers, and highlighted "the important and elevated role" of its senior executives in "maintaining [that] commitment."

32.     The 2014 10-K contained signed certifications pursuant to  SOX by the Individual Defendants, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.     On March 3, 2016, Northern Oil filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K").  For the quarter, Northern Oil reported a net loss of $172.31 million, or $2.84 per diluted share, on revenue of $56.91 million, compared to net income of $103.58 million, or $1.71 per diluted share, on revenue of $111.68 million for the same period in the prior year.  For 2015, Northern Oil reported a net loss of $975.36 million, or $16.08 per diluted share, on revenue of $275.06 million, compared to net income of $163.75 million, or $2.69 per diluted share, on revenue of $423.75 million for 2014.

34.     In the 2015 10-K, Northern Oil stated, in part:

***Directors, Executive Officers and Corporate Governance***

. . .

We have adopted a Code of Business Conduct and Ethics that applies to our chief executive officer, chief financial officer and persons performing similar functions. A copy is available on our website at www.northernoil.com.  We intend to post on

our website any amendments to, or waivers from, our Code of Business Conduct and Ethics pursuant to the rules of the SEC and NYSE MKT.

35.    As described *supra* at ¶ 21, at all relevant times the Company's Code of Business Conduct and Ethics, incorporated by reference in the Company's 2015 10-K, described the Company's purported commitment to the promotion of ethical conduct by its officers, and highlighted "the important and elevated role" of its senior executives in "maintaining [that] commitment."

36.    The statements referenced in ¶¶ 19-35 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Northern Oil's compliance policies with respect to SEC regulations and the Company's Code of Business Conduct and Ethics were inadequate to detect and/or prevent misconduct by the Company's officers; (ii) consequently, the Company's CEO, Defendant Reger, was able to engage in illegal stock manipulation during his tenure at Northern Oil; (iii) Reger was consequently unfit to serve as Northern Oil's CEO; and (iv) as a result of the foregoing, Northern Oil's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

37.    On August 16, 2016, Northern Oil fired Reger as CEO after Reger told the Company that he had received a Wells Notice from the SEC and faced federal sanctions in connection with the SEC's investigation of 2012 trading patterns in the securities of Dakota Plains, a company in which Reger initially invested in 2008.  Northern Oil stated that Reger has been removed from the Company's board, effective immediately, and that the Company does not believe that Reger will be entitled to any severance payment.

10

38.     On this news, Northern Oil stock fell $0.25, or 6.28%, to close at $3.73 on August 16, 2016.

39.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Northern Oil securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Northern Oil securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Northern Oil or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Northern Oil;

- whether the Individual Defendants caused Northern Oil to issue false and misleading statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading statements;

- whether the prices of Northern Oil securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Northern Oil securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Northern Oil securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Northern Oil securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Northern Oil securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Northern Oil securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Northern Oil's compliance policies and business prospects.

53.     By virtue of their positions at Northern Oil, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Northern Oil securities from their personal portfolios.

55.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Northern Oil, the Individual Defendants had knowledge of the details of Northern Oil's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Northern Oil.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Northern Oil's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Northern Oil securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Northern Oil's business and financial condition which

were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Northern Oil securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

57.    During the Class Period, Northern Oil securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Northern Oil securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Northern Oil securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Northern Oil securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

60.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Northern Oil, and conducted and participated, directly and indirectly, in the conduct of Northern Oil's business affairs.  Because of their senior positions, they knew the adverse non-public information about Northern Oil's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Northern Oil's financial condition and results of operations, and to correct promptly any public statements issued by Northern Oil which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Northern Oil disseminated in the marketplace during the Class Period concerning Northern Oil's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Northern Oil to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Northern Oil within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Northern Oil securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Northern Oil.  By reason of their senior management positions and/or being directors of Northern Oil, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Northern Oil to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Northern Oil and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Northern Oil.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 18, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com
        mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I,   _Jeffrey M. Fries_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Northern Oil and Gas, Inc. ("Northern Oil" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Northern Oil securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Northern Oil securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Northern Oil securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___8/17/2016_____
               (Date)

_____
       (Signature)

Jeffrey M. Fries
_____
    (Type or Print Name)

**NORTHERN OIL AND GAS, INC. (NOG)**                              **Fries, Jeffrey M.**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 1/15/2016 | Purchase | 1,200 | $2.7578 |
| 2/2/2016 | Purchase | 700 | $2.9078 |
| 7/25/2016 | Purchase | 2,000 | $4.1500 |