UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY FRIES, Individually and On Behalf of
All others Similarly Situated,

                    Plaintiff,

      - against -

NORTHERN OIL AND GAS, INC., MICHAEL L.
REGER, and THOMAS W. STOELK,

                  Defendants.

**OPINION AND ORDER**

16 Civ. 6543 (ER)

Ramos, D.J.:

      This case arises out of alleged violations of the Securities Exchange Act of 1934 by

Northern Oil and Gas, Inc. ("Northern Oil"), Michael L. Reger ("Reger"), and Thomas W. Stoelk

(collectively, the "Defendants"). Plaintiff Jeffrey Fries ("Fries") brings this class action on

behalf of all persons, other than Defendants, who purchased or otherwise acquired Northern Oil

securities between March 1, 2013 and August 15, 2016 (the "Class Period"). Plaintiffs Matthew

Atkinson ("Atkinson") and Richard Miller ("Miller") move for joint appointment as lead

plaintiffs of the proposed class (the "Class"), and for approval of Pomerantz Grossman Hufford

Dahlstrom & Gross LLP ("Pomerantz") and Goldberg Law PC ("Goldberg") as co-lead counsel.

Plaintiff Vittorio Franceschi ("Franceschi") also moves for appointment as lead plaintiff and

approval of Hagens Berman Sobol Shapiro LLP as lead counsel.

      For the reasons set forth below, Atkinson and Miller's motion is GRANTED in part and

DENIED in part without prejudice. Franceschi's motion is DENIED.

## I.    Background

Defendant Northern Oil is an independent energy company engaged in the acquisition, exploration, development, and production of oil and natural gas properties in the United States. Class Action Compl. ("CAC") at ¶¶ 2, 17.  Throughout the Class Period, Defendants allegedly made materially false and misleading statements regarding Northern Oil's business, operational and compliance policies.  *Id.* at ¶ 4.  Specifically, Plaintiff Fries alleges on behalf of the Class that because of its inadequate internal controls concerning Securities and Exchange Commission ("SEC") regulations and ethics policies, Reger, Northern Oil's Chief Executive Officer ("CEO"), was able to engage in illegal stock manipulation.  *Id.*  Consequently, Northern Oil's public statements filed between March 1, 2013 and March 3, 2016 describing, *inter alia*, its purported commitment to the promotion of ethical conduct by its officers and its internal controls were allegedly materially false and misleading.  *Id.* at ¶¶ 19-35.  On August 16, 2016, Northern Oil terminated Reger after Reger revealed that he received a Wells Notice from the SEC and faced federal sanctions related to the SEC's investigation of trading patterns in the securities of Dakota Plains Holdings, Inc., a company that Reger had invested in.  *Id.* at ¶ 37.  Plaintiff Fries claims that Class members have suffered significant losses and damages due to Defendants' wrongful acts and omissions, and the subsequent decline in the market value of Northern Oil's securities upon Reger's termination.  *Id.* at ¶¶ 37-39.

On August 18, 2016, Plaintiff Fries, through his counsel Pomerantz, filed the instant Class Action Complaint ("CAC") against Defendants.  Doc 1.  On the same day, Pomerantz announced the filing over *Global Newswire* as required by the Private Securities Litigation Reform Act ("PSLRA"), and advised investors that the deadline to file a motion for appointment as lead plaintiff is October 17, 2016.  Doc 8 Ex. A.  On October 17, 2016, Plaintiffs Atkinson

and Miller filed the instant motion for joint appointment as lead plaintiffs and approval of Pomerantz and Goldberg as co-lead counsel.  Doc. 6.  Later that day, Plaintiff Franceschi also moved for appointment as lead plaintiff and approval of Hagens Berman Sobol Shapiro LLP as lead counsel.  Doc. 9.  On October 27, 2016, Plaintiff Franceschi filed a notice of non-opposition to Plaintiffs Atkinson and Miller's motion, but noted that if the Court determined that Plaintiffs Atkinson and Miller were not suited to serve as lead plaintiffs, he would be ready and able to fill that position.  Doc. 12.  Defendants take no position on the issue of appointment of lead plaintiff or counsel.  Doc. 19.

## II.   Discussion

### A.  Appointment of Lead Plaintiff

The PSLRA governs motions for the appointment of lead plaintiffs of putative class actions brought under the federal securities laws.  *See, e.g.*, *In re Braskem S.A. Sec. Litig.*, No. 15 CIV. 5132 (PAE), 2015 WL 5244735, at *4 (S.D.N.Y. Sept. 8, 2015).  The PSLRA instructs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u–4(a)(3)(B)(i).  The statute sets forth a rebuttable presumption "that the most adequate plaintiff . . . is the person or group of persons" that (i) "has either filed the complaint or made a motion in response to" public notice of the filing of the class action, (ii) "has the largest financial interest in the relief sought by the class," and (iii) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  § 78u-4(a)(3)(B)(iii)(I). This presumption is rebutted "only upon proof by a member of the purported plaintiff class" that the presumptively most-adequate plaintiff "will not fairly and adequately protect the interests of

the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u–4(a)(3)(B)(iii)(II).

### i. Filing Complaint or Motion

Here, it is undisputed that all movants have satisfied the first requirement by filing timely motions on October 17, 2016 in response to public notice of this suit. Docs. 6, 9.

### ii. Largest Financial Interest

The next, most critical question is which "person or group of persons" seeking lead-plaintiff status has the largest financial interest in the relief sought by the putative class. The Second Circuit has not yet addressed whether unrelated class members may aggregate their claims in order to establish the "largest financial interest" element. *Goldberger v. PXRE Grp., Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417, at *3 (S.D.N.Y. Mar. 30, 2007). Nevertheless, the prevailing view in this District is that unrelated investors can aggregate their financial losses only "if such a grouping would best serve the class." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 (KMW), 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015) (citing *In re CMED Sec. Litig.*, No. 11-CV-9297 (KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012)). Determination of whether the grouping would best serve the class is made "on a case-by-case basis," and hinges on whether the members of the group can "function cohesively and . . . effectively manage the litigation apart from their lawyers." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, 'To allow an

aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a

lead plaintiff.'" (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005)).

Courts in this district have considered the following factors in evaluating the proposed

group of unrelated investors:

(1) existence of a pre-litigation relationship between group members;

(2) involvement of the group members in the litigation thus far;

(3) plans for cooperation;

(4) the sophistication of its members; and

(5) whether the members chose outside counsel, and not vice versa.

*Varghese*, 589 F. Supp. 2d at 392.

Atkinson and Miller did not proffer any evidentiary support pertaining to those five

factors. Their motion is entirely devoid of allegations regarding why the two plaintiffs decided

to work together or if they even know each other. Although certain courts in this district have

held that a group of persons with no pre-litigation history "may be acceptable . . . so long as the

group is relatively small and therefore presumptively cohesive," plaintiffs that have a pre-

litigation history are more likely to be appointed as lead plaintiffs. *Freudenberg v. E*Trade*

*Financial Corp.,* Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540,

2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008). Moreover, a small group membership is not

dispositive. *Beckman v. Ener1, Inc.*, No. 11 CIV. 5794 (PAC), 2012 WL 512651, at *3

(S.D.N.Y. Feb. 15, 2012) ("[T]he fact that an unrelated group is small does not, in and of itself,

make it a more acceptable lead plaintiff than a competing cohesive group."). Indeed, if there is

no pre-litigation relationship, plaintiffs must present a more compelling showing as to their

fitness for the position. *Elstein v. Net1 UEPS Techs., Inc.*, No. 13 CIV. 9100 (ER), 2014 WL

3687277, at *4 (S.D.N.Y. July 23, 2014) (citing *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.,* No. 00–3605(DRD), 2000 WL 33173017, at *5 (D.N.J. Nov. 16, 2000)).

Atkinson and Miller have not made any showing, let alone a compelling one, that they are fit to serve as joint lead plaintiffs. They have not demonstrated how they would seek to work together in managing this litigation, or that they are sophisticated plaintiffs that will act collectively and separately from their lawyers. Thus, there is no evidence upon which this Court can find that Atkinson and Miller in aggregate would better serve the class than if they were separate. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (rejecting joint application of an individual investor and an institutional plaintiff because there is "no need to have them both as Lead Plaintiff"). There is also no basis upon which this Court can determine whether or not the two plaintiffs have been formed into a group as a mere construct cobbled together by their attorneys. Accordingly, Atkinson and Miller cannot aggregate their financial interests to seek joint appointment.

Although the Court denies Atkinson and Miller's joint motion for appointment as lead plaintiffs, the Court may consider Atkinson and Miller as if they have moved individually to be appointed as lead plaintiff. *See e.g. Varghese*, 589 F.Supp.2d at 394 (denying motion of a group but evaluating the group's largest shareholder against two plaintiffs who had individually moved for appointment); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (rejecting aggregation of two groups and appointing as lead plaintiff a member of one of the groups); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (declining to aggregate financial interests of group and appointing as lead plaintiff the group member with the largest financial interest).

Courts in this Circuit typically examine four factors to determine a lead plaintiff's financial interest:

> (1) the total number of shares purchased during the class period;
>
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
>
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
>
> (4) the approximate losses suffered.

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ. 10020 (RMB), 2015 WL 1345931, at *2 (S.D.N.Y. Mar. 19, 2015) (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011)).  "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant."  *In re Braskem*, 2015 WL 5244735, at *4 (collecting cases).

Applying these factors, the Court finds that, of the three plaintiffs who have made applications for lead plaintiff, Atkinson has the greatest financial interest in this case.  The first factor favors Miller, who purchased a total of 11,000 shares during the Class Period.  Hood Decl. Ex. C.  In comparison, Atkinson purchased a total of 9,865 shares and Franceschi only purchased 3,460 shares.  Hood Decl. Ex. C; Kathrein Decl. Ex. 3.  However, since Miller sold 6,000 of his shares in January and April 2016, while Atkinson retained all of his shares, Atkinson purchased a greater number of net shares during the Class Period.  Hood Decl. Ex. C.  Furthermore, Atkinson expended net funds of $123,030 in purchasing those shares whereas Miller and Frenceschi only expended $54,592 and $49,686.40, respectively.  Hood Decl. Ex. C; Kathrein Decl. Ex. 3.  The last factor, which is the most significant, also weighs in favor of Atkinson.  Atkinson has

suffered an approximate loss of $93,775, whereas Miller and Franceschi suffered financial losses of less than half that amount of approximately $35,517 and $40,506.95, respectively. *Id.* No party contests the validity of Atkinson's figures. Accordingly, in the absence of any other pending motions for lead plaintiff, Atkinson is presumed to have the greatest financial stake in the litigation.

### iii. Rule 23 Requirements

Atkinson must still "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be appointed lead plaintiff. § 78u-4(a)(3)(B)(iii)(I)(cc). Federal Rule of Civil Procedure 23(a) sets forth four requirements for class certification: (1) the class is so numerous that simple joinder of all members is impracticable; (2) there exist questions of law or fact common to the whole class; (3) the claims of the lead plaintiff are typical of the claims of the whole class; and (4) the lead plaintiff will adequately represent the interests of all class members. *See* Fed. R. Civ. P. 23(a). "When deciding competing motions to be appointed lead plaintiff under the PSLRA, however, a court need not conduct a full analysis of whether the requirements of Rule 23 have been met." *Faig v. Bioscrip, Inc.*, No. 13 CIV. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013). "Rather, '[a]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'" *Id.* (quoting *Jambay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)); *see also, e.g.*, *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012).

"The typicality requirement is satisfied when the class members' claims 'arise [ ] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL

946875, at *11 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). The lead plaintiff's claims, however, "'need not be identical' to the claims of the class to satisfy this requirement." *Id.* (quoting *Skwortz v. Crayfish Co., Ltd.*, No. 00 Civ. 6766 (DAB), 2001 WL 1160745, at * 6 (S.D.N.Y. Sept. 28, 2001)). Atkinson's claims here are typical. They arise from purchases of shares at prices that were inflated by the same alleged misstatements and omissions that the complainant and other movants base their claims on, and he also seeks the same relief, based on the same legal theories. *See* Mem. Supp. Mot. to Appt. Atkinson and Miller to Serve as Lead Pl. & Mot. to Appt. Lead Counsel ("Atkinson and Miller Br."), Doc. 7, at 5-7. Furthermore, "[n]o party or movant has contested [Atkinson's] typicality." *In re Braskem*, 2015 WL 5244735, at *6.

Atkinson has also made a sufficient showing of adequacy under Rule 23(a)(4). "The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007)). Atkinson has retained competent and experienced counsel with extensive experience in these types of securities class actions. Atkinson and Miller Br. at 7. He has also demonstrated losses that suggest he will have a strong interest in advocating on behalf of the Class. Hood Decl. Ex. C. Moreover, to date, there have not been any reported conflicts between Atkinson and the other members of the class. Atkinson and Miller Br. at 7.

* * *

As a result of its timely filing, its large financial stake, the typicality of its claims, and the adequacy of its representation, Atkinson is entitled to a presumption that it is the "most adequate plaintiff." § 78u-4(a)(3)(B)(iii)(I). That presumption stands unrebutted, because no other class member has come forth with proof that Atkinson "will not fairly and adequately protect the interests of the class" or is subject to "unique defenses" that render it incapable of adequately representing the class. § 78u–4(a)(3)(B)(iii)(II). The Court therefore appoints Atkinson as lead plaintiff.

### B. Approval of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u–4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Sallustro*, 93 F. Supp. 3d at 278 (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

Atkinson has moved for approval of Pomerantz and Goldberg as co-lead counsel. No party or movant has objected to the proposed selection. After reviewing Atkinson's submission detailing Pomerantz and Goldberg's experience, the Court, like many others in this Circuit before it, concludes that the firms are qualified to serve as co-lead counsel of the class. *See* Hood Declaration Ex. D, E. Accordingly, the Court approves Pomerantz and Goldberg as co-lead counsel. "This is done with the understanding that there shall be no duplication of attorney's services and that the use of co-lead counsel will not in any way increase attorney's fees and expenses." *Peters*, 2012 WL 946875, at *12 (citation omitted).

### III.    Conclusion

For the aforementioned reasons, Atkinson and Miller's motion for appointment as lead plaintiffs and approval of lead counsel is GRANTED in part and DENIED in part without prejudice. Atkinson is individually appointed as lead plaintiff, and Pomerantz and Goldberg are approved as co-lead counsel. Franceschi's motion for appointment as lead plaintiff and approval of lead counsel is DENIED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 6, 9.

It is SO ORDERED.

Dated:    May 5, 2017
          New York, New York

                                        Edgardo Ramos, U.S.D.J.