UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY FRIES, Individually and On Behalf of
All Others Similarly Situated,

                        Plaintiff,

   - against -

NORTHERN OIL AND GAS, INC., MICHAEL L.
REGER, and THOMAS W. STOELK,

                        Defendants.

**OPINION AND ORDER**

16 Civ. 6543 (ER)

Ramos, D.J.:

       This case is a putative class action on behalf of everyone who purchased or acquired securities in Northern Oil and Gas, Inc. between March 1, 2013 and August 15, 2016, claiming that defendants Northern Oil, Michael L. Reger, and Thomas Stoelk (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by making false and misleading statements in their public filings and disclosures. The lead plaintiff in this case is Matthew Atkinson, an individual who bought shares in Northern Oil during the class period. Doc. 20 at 7. Before the Court are Defendants' motions to dismiss Atkinson's Second Amended Complaint ("SAC") for failure to state a claim. For the reasons that follow, the motions are GRANTED.

I.     BACKGROUND

       The Court assumes the reader's familiarity with the key factual allegations supporting Plaintiff's claims; these allegations are set out in detail in *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706 (S.D.N.Y. 2018). In that opinion, the Court dismissed Plaintiff's case in its entirety for failure to state a claim with leave to amend. *Id.* at 723. The Court found that

Plaintiff failed to adequately allege that Defendants made a misleading statement or omission, or that they did so with scienter. *See id.* at 719–20, 721–22.

Plaintiff filed the SAC on January 26, 2018. Doc. 51. The SAC contains some new facts. First, in its first and second quarterly reports of 2016, Northern Oil disclosed that it had spent half a million dollars on legal costs related to the SEC's investigation of Dakota Plains, but stated that it was not an SEC target itself. SAC ¶¶ 134–39. Second, Defendants knowingly used Northern's staff, space, and resources to help Reger and Dakota Plains, including by facilitating some of Reger and Dakota Plains's misconduct. SAC ¶¶ 65–84.

On March 23, 2018, Defendants moved to dismiss the SAC. Docs. 54, 56. Reger moved separately from Northern Oil and Thomas Stoelk.

## II. LEGAL STANDARD

### A. *Motion to Dismiss*

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In determining the motion to dismiss, the Court may "consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x. 448 (2d Cir. 2015) (summary order) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court may "take judicial notice of public disclosure documents that must be filed with the [SEC] and documents that both 'bear on the adequacy' of SEC disclosures and are 'public disclosure documents required by law.'" *Silsby*, 17 F. Supp. 3d at 354 (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991)); *see also In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013), *aff'd*, 566 Fed. Appx. 93 (2d Cir. 2014) (summary order).

B.  *Heightened Pleading Standard Under Rule 9(b)*

A complaint alleging securities fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA") by stating the circumstances constituting fraud with particularity. *See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320–21 (2007)). These requirements apply whenever a plaintiff alleges fraudulent conduct, regardless of whether fraudulent intent is an element of a claim. *Rombach v. Chang*, 355 F.3d 164, 170–71 (2d Cir.

2004) (quoting Fed. R. Civ. P. 9(b)) ("By its terms, Rule 9(b) applies to 'all averments of fraud.'")

Specifically, Rule 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent. *See, e.g., Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (citing *Rombach*, 355 F.3d at 170). Conditions of a person's mind—such as malice, intent or knowledge—may be alleged generally, however. *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (citing Fed. R. Civ. P. 9(b)). Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1), (2)); s*ee also, e.g.*, *Slayton v. Am. Express, Co.*, 604 F.3d 758, 766 (2d Cir. 2010).

These heightened pleading standards, when viewed together with the more general standards applicable to Rule 12(b)(6) motions to dismiss under *Twombly* and *Iqbal*, make clear that "plaintiffs must provide sufficient particularity in their allegations to support a plausible inference that it is more likely than not that a securities law violation has been committed." *In re Lululemon Sec. Litig.,* 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (citing *ECA & Local 134 IBEW*, 553 F.3d at 196).

III. **ARGUMENT**

    A. *Section 10(b) and Rule 10b-5*

Section 10(b) of the Securities Exchange Act of 1934 prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j(b) (1934), while SEC Rule 10b-5, promulgated thereunder, creates liability for a person who makes "any untrue statement of a material fact or . . . omit[s] to state a material fact . . . in connection with the purchase or sale of any security." *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 397 (S.D.N.Y. 2013) (quoting 17 C.F.R. § 240.10b-5 (1951)). Rule 10b-5, promulgated by the SEC to implement Section 10(b), "more specifically delineates what constitutes a manipulative or deceptive device or contrivance." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999). Under Rule 10b-5, it is unlawful for any person, directly or indirectly, by the use of any means specified in Section 10(b):

> (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To state a private civil claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that: (1) the defendant made a material misrepresentation or omission, (2) with scienter, *i.e.*, a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or omission, thereby (5) causing economic loss. *Dura*, 544 U.S. at 341–42; *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007).

As in their prior motion to dismiss, Defendants argue that Plaintiff has failed to adequately allege in the SAC that Defendants made actionable misrepresentations or omissions, or acted with scienter. Plaintiff argues that the SAC makes new factual allegations that state a

plausible claim. The Court addresses in turn the new allegations' effect on the plausibility of Plaintiff's claim.

1. Misrepresentations or omissions

Defendants argue that Plaintiff still fails in the SAC to allege that they made a material misrepresentation or omission. The Court agrees.

Plaintiff argues that Northern Oil's Code of Business Conduct and Ethics (the "Code") was misrepresentative because it failed to detect or prevent Reger's misconduct. SAC ¶ 133. Breaches of a corporate code of ethics do not render that code misleading unless the company assures investors that individuals do in fact comply with the code. *See Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 WL 1169629, at *11 (S.D.N.Y. Mar. 28, 2017). In its prior opinion, the Court rejected Plaintiff's argument on the ground that the Code was clearly aspirational. *See Fries*, 285 F. Supp. 3d at 717–18. Plaintiff adds no additional allegations in the SAC relating to the Code. Accordingly, Plaintiff continues to fail to plead an actionable misstatement or omission with respect to the Code of Business Conduct and Ethics.

Plaintiff also argues that Defendants misled investors by omitting to disclose certain facts, thus rendering other public statements misleading. First, Plaintiff argues that Defendants had to disclose Reger's misconduct because they emphasized his positive qualities and value to Northern Oil. Second, Plaintiff argues that Defendants had to disclose that Northern Oil had, among other things, improperly comingled its resources with Dakota Plains because they publicly stated that Northern Oil was not an SEC subject. Defendants argue that they were under no such legal obligations.

The failure to disclose material information does not amount to an actionable misrepresentation, absent a duty to disclose. *In re Marsh & Mclennan Companies, Inc. Sec.*

6

*Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006); *see also Chiarella v. United States*, 445 U.S. 222, 235 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."). One duty to disclose arises when a corporation makes a disclosure, whether voluntary or required, and additional information is necessary to make the disclosure complete and accurate. *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992). "Thus, with respect to allegations of corporate mismanagement, disclosure is required where 'a failure to disclose facts that amount to mismanagement may render other statements misleading.'" *In re Marsh & Mclennan*, 501 F. Supp. 2d at 469. Courts have found disclosure to be required under this principle in three circumstances:

> (1) "when a corporation puts the reasons for its success at issue, but fails to disclose that a material source of its success is the use of improper or illegal business practices;" (2) "when a defendant makes a statement that can be understood, by a reasonable investor, to deny that the illegal conduct is occurring;" and (3) "when a defendant states an opinion that, absent disclosure, misleads investors about material facts underlying that belief."

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016), *reconsideration denied*, 2016 WL 2642223 (S.D.N.Y. May 6, 2016) (internal quotations marks omitted).

Defendants were under no obligation to disclose Reger's misconduct at Dakota Plains. Plaintiff made the same argument in his First Amended Complaint ("FAC").[1] He argued that Defendants' representations that Reger had a wealth of knowledge and expertise in Northern Oil's industry and that Reger was instrumental to Northern Oil's success created a misleading impression of Reger that Defendants had to correct by disclosing "facts which made Reger an unfit CEO." *See Fries*, 285 F. Supp. 3d at 718. The Court disagreed, as the omitted fact of

---

[1] On May 8, 2017, the Court appointed Matthew Atkinson as lead plaintiff. Doc. 20. Consequently, the Court ordered Atkinson to file an amended complaint. Doc. 24. Atkinson did so on July 6, 2017. Doc. 25. To distinguish the July 6, 2017 complaint from the SAC, the Court refers to the former as the "First Amended Complaint." The parties, on the other hand, refer to the FAC as the "Consolidated Amended Complaint." *See, e.g.*, Docs. 36, 38.

7

Reger's alleged misconduct did not render Defendants' representations as to his role in Northern Oil untrue. *See id.* at 718–19. The Court continues to reject Plaintiff's argument for the same reason.

The SAC, however, contains new allegations in support of Plaintiff's theory that Defendants misled by omission. Plaintiff argues that in its 2016 Q1 and Q2 quarterly reports to the SEC, Northern Oil misled investors by minimizing its and Reger's role in Dakota Plains. SAC ¶¶ 134, 137. Specifically, Northern Oil made the following disclosure in its 2016 Q1 Form 10-Q:

> General and administrative expense was $4.3 million in the first quarter of 2016 compared to $4.4 million in the first quarter of 2015. Lower compensation expense in 2016 ($0.4 million) was offset by higher legal and professional expense ($0.5 million). The reduction in compensation expense resulted from 2015 third quarter staff reductions and lower incentive plan amounts. The increase in legal and professional expense was primarily due to the Company engaging outside legal counsel to assist it in complying with requests from the SEC relating to an ongoing investigation of 2012 trading patterns in the securities of Dakota Plains Holdings, Inc. ("Dakota Plains"). **Michael Reger, our chief executive officer, was an initial investor in Dakota Plains in 2008. The Company has never owned any interest in Dakota Plains. Based on the information available to it, the Company does not believe that it, or any conduct by the Company, is the focus of any investigation by a governmental agency regarding this matter.**

SAC ¶ 134 (emphasis in original). Northern Oil made the same disclosure in substance in its Q2 Form 10-Q. SAC ¶ 137. Plaintiff contends that, having "broached the subject of the SEC's investigation into Reger's activities at Dakota Plains," Northern Oil had a duty to disclose that (1) Northern Oil's operations, personnel, and resources were heavily comingled with Dakota Plains; (2) Reger was not just an investor but a control person at Dakota Plains; (3) the government was investigating Reger's illegal conduct, partly facilitated by Northern Oil resources, at Dakota Plains; and (4) as a result, many of Northern Oil's public statements were false or misleading. SAC ¶¶ 136, 139. Because it failed to do so, Plaintiff argues, Defendants'

8

statements (1) amounted to a false denial that Reger had participated in illegal conduct and (2) misled investors about the SEC investigation into Dakota Plains, results which are actionable under § 10(b) and Rule 10b-5. The Court addresses both these theories in turn.

First, Defendants' statements did not amount to a denial of illegal conduct. A reasonable investor would not interpret Northern Oil's description of Reger as an "initial investor" of Dakota Plains—an accurate description—to preclude Reger from having done criminal acts. Describing someone as an initial investor of a company does not suggest that that is the beginning and end of his or her relationship with that company.

Defendants' statements are distinct from those in prior cases in this district that were found to function as denials of illegal conduct. In *In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 12504 (S.D.N.Y. Aug. 30, 2000), for instance, the court held that the defendant's statement that it faced competition from its competitor misled investors given that the defendant in fact had an illegal price-fixing agreement with the competitor, *id.* at *11–12. A reasonable investor would interpret a company's statement that another company is a competitive threat to preclude a price-fixing agreement; after all, competitors enter into price-fixing agreements specifically to avoid competition. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600 (S.D.N.Y. 2017) is another distinct case. There, the court held that the company had misled investors by representing that it had adopted an "effective" anti-bribery policy when in fact high-level officers were participating in many illegal bribery schemes. *See id.* at 659–60. Thus, in both *In re Sotheby's* and *In re Banco Bradesco*, the companies did not just fail to fully disclose the underlying illegal behavior, but made statements that strongly implied there was no illegal conduct. Defendants' statements, unlike those made in *In re Sotheby's* and *In re*

9

*Bradesco*, did no such thing. Defendants' statements did not amount to a denial of illegal conduct.

Second, Defendants made no statements in Northern Oil's Form 10-Q that amounted to an "opinion that, absent disclosure, misleads investors about material facts underlying that belief," *Menaldi*, 164 F. Supp. 3d at 581. Plaintiff attempts to characterize Northern Oil's statement that it was not "the focus of any investigation by a governmental agency regarding" Dakota Plains as such, but fails. Most obviously, Defendants' statement is not an opinion, but a fact. The SEC indeed was not investigating Northern Oil. Plaintiff's statement is thus unlike that in *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393 (S.D.N.Y. 2018), where the Court found the company's statement that it "believe[s]" it was successful for certain reasons to be an opinion, *id.* at 443. But more pointedly, Defendants' statement did not mislead investors about any underlying material facts. A reasonable investor would not understand the fact the SEC is not investigating Northern Oil to mean that Northern Oil did not do anything wrong. Plaintiff's argument that the moment Defendants acknowledged the SEC investigation into Reger and Dakota Plains, they became obliged to disclose all of Northern Oil's uncharged, related wrongdoing, runs in the face of the general rule in this district that "[c]orporations do not . . . have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" *Menaldi*, 164 F. Supp. 3d at 580 (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014)). Following the Second Circuit in *City of Pontiac*,[2] the Court in *Menaldi* explicitly rejected the contention that, to avoid liability under § 10(b), "in addition to disclosing

---

[2] *City of Pontiac* concerned allegedly misleading failures to disclose corporate wrongdoing under § 11 of the Securities Act of 1933. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014). Section 11 imposes civil liability on issuers and signatories "of a registration statement that 'contained an untrue statement of a material fact or omitted to state a material fact . . . necessary to make the statements therein not misleading.'" 15 U.S.C. § 77k. Though § 11 applies to a narrower set of circumstances than § 10-b, it "give[s] rise to liability more readily" because plaintiffs alleging a § 11 violation need not show scienter, reliance, or loss causation. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010).

the existence of an investigation, defendants were required to disclose that [they were], in fact, engaged" in a criminal scheme, 164 F. Supp. 3d at 581. Defendants thus did not actionably mislead investors by acknowledging the SEC investigation into Reger and Dakota Plains while failing to disclose its own alleged involvement.

Nothing in the portion of the Form 10-Q's that Plaintiff finds so incriminating could be read by a reasonable investor to deny any illegal conduct. Northern's disclosures were entirely true. Plaintiff has failed to show that the Form 10-Q's were misleading. The Form 10-Q's constitute the sole new facts Plaintiff added in his SAC to show that Defendants made a material misstatement in violation of § 10(b) and Rule 10b-5. Consequently, as it did for the FAC, the Court finds that Plaintiff fails to allege an actionable misstatement or omission by Defendants.

2. Scienter

Even if Plaintiff had sufficiently alleged a misstatement or omission in the SAC, his claims would nonetheless fail because he has not sufficiently alleged scienter.

Section 10(b) and Rule 10b-5 require plaintiffs to allege a state of mind demonstrating "an intent to deceive, manipulate or defraud," also known as scienter. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)); *see also, e.g.*, *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 469 (S.D.N.Y. 2004). To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege facts with particularity that would give rise "to a strong inference that the defendant acted with the required state of mind." *ECA & Local 134 IBEW*, 553 F.3d at 198 (alteration and internal quotation marks omitted). A "strong inference" that a defendant acted with a certain intent is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314

11

(emphasis added). This inquiry goes beyond the ordinary Rule 9(b) framework and requires courts to consider "not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.* "The relevant inquiry for the Court 'is whether *all* of the facts alleged, taken collectively, give rise to a *strong* inference of scienter, not whether any *individual* allegation, scrutinized in isolation, meets that standard.'" *In re Magnum Hunter Res. Corp. Sec. Litig.*, 2014 WL 2840152, at *17 (S.D.N.Y. June 23, 2014) (emphasis in original) (citing *Tellabs*, 551 U.S. at 322–23).

"When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The "most straightforward way to raise such an inference for a corporate defendant" in most cases is "to plead it for an individual defendant," however, there may be some instances where a plaintiff may allege scienter as to a corporate defendant without also alleging scienter as to an individual defendant. *Id.*; *Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722, at *12 (S.D.N.Y. Sept. 29, 2010) ("[A] plaintiff can raise an inference of corporate scienter by establishing scienter on behalf of an employee who acted within the scope of his employment."). "A strong inference of corporate scienter may also be appropriate 'where a corporate statement is so important and dramatic that it would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.'" *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 384 (S.D.N.Y. 2013) (citing *Vining*, 2010 WL 3825722, at *13).

A plaintiff may establish scienter by alleging facts that show either (1) that the defendant had the "motive and opportunity" to commit the alleged fraud, or (2) "strong circumstantial

evidence of conscious misbehavior or recklessness." *ECA & Local 134 IBEW*, 553 F.3d at 198; *see also, e.g., Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 574 (S.D.N.Y. 2012). When a plaintiff fails to allege a motive to commit fraud, the plaintiff's allegations that indicate a defendant's conscious misbehavior or recklessness "must be correspondingly greater." *Kalnit*, 264 F.3d at 142 (internal citations omitted).

The Court found that Plaintiff failed to plead scienter sufficiently in the FAC. *See Fries*, 285 F. Supp. 3d at 722. In the SAC, Plaintiff adds new allegations purporting to show scienter. Plaintiff purports to proceed under both theories of scienter, alleging both that Defendants "were personally motivated to make false statements and omit material information necessary to make the statements not misleading" and that Defendants did so "willfully or with reckless disregard for the truth." SAC ¶¶ 169, 170. Plaintiff's new allegations all come from "CW1," a confidential witness who reported directly to Reger while working at Northern. Among these new allegations, highlighted in Plaintiff's briefing, are that (1) Dakota Plains used Northern Oil lawyers to draw up the papers to take Dakota Plains public, (2) Dakota Plains officers held meetings at Northern Oil offices, (3) Northern's employees were frequently required to perform tasks for Dakota Plains, and (4) Northern's board members knew that its resources were being allocated to Dakota Plains. SAC ¶¶ 66–68, 70–71, 72, 73. These and other allegations, Plaintiff argues, show that Defendants knew that Reger's activities at Dakota Plains implicated Northern in the SEC investigation into Dakota Plains.

But none of that has to do with whether Defendants made the allegedly misleading statements intentionally. Plaintiff confuses the question of whether Defendants believed that their statements were misleading with whether Defendants were aware of the facts that they, under Plaintiff's theory, had to disclose to prevent their statements from being misleading. The

SAC cites no facts showing that Defendants engaged in conscious or reckless behavior in making the contested Form 10-Q disclosures. Indeed, CW1's allegations all concern events occurring years before the allegedly misleading statements were made. The SAC also alleges that Defendants were personally motivated to commit fraud, SAC ¶ 170, but only in a conclusory fashion—Plaintiff cites no facts that would make that theory of scienter plausible. Consequently, as it did for the FAC, the Court finds that Plaintiff fails to establish the requisite scienter under § 10(b) and Rule 10b-5.

Because Plaintiff has failed to allege an actionable misstatement or omission and to plead the requisite scienter for such a misstatement or omission, Plaintiff's § 10(b) and Rule 10b-5 claim is dismissed.

B. *Section 20(a)*

Liability for a § 20(a) violation is derivative of liability for a § 10(b) violation. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 297–98 (S.D.N.Y. 2006). Because Plaintiff has inadequately pled a § 10(b) violation, Plaintiff cannot make a successful § 20(a) claim. Consequently, Plaintiff's § 20(a) claim is dismissed.

C. *Leave to Amend*

Rule 15 of the Federal Rules of Civil Procedure states that the court should freely give leave to plaintiffs to amend their complaint "when justice so requires." The Second Circuit has affirmed that Rule 15 of the Federal Rules of Civil Procedures embodies a "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)). "Leave to amend need not be granted, however, where the proposed amendment would

be futile." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (internal quotation marks and alteration omitted).

The Court has already given Plaintiff an opportunity to amend his complaint after explaining the ways in which his claims are deficient. Plaintiff brings the same causes of action in his SAC, but still fails to adequately plead a violation of § 10(b), Rule 10b-5, and § 20(a). Over two years into this litigation, Plaintiff has not been able to cite any misleading statements or omissions by Defendants, much less adequately allege that Defendants made such statements and omissions intentionally. At this point, the Court concludes that any amendment would be futile. Plaintiff's claims will therefore be dismissed with prejudice.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss are GRANTED with prejudice. The Clerk of the Court is respectfully directed to terminate the motion, Docs. 54 and 56, and close the case. It is SO ORDERED.

Dated: December 10, 2018
New York, New York

Edgardo Ramos, U.S.D.J.